# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 18, 2001 Session

## STATE OF TENNESSEE v. EUGENE FLOYD LOCKHART, a/k/a FLOYD E. LOCKHART

**Appeal from the Criminal Court for Davidson County**
**No. 2000-A-72     Steve R. Dozier, Judge**

**Filed December 21, 2001**

**No. M2000-02171-CCA-R3-CD**

The defendant appeals the denial of probation for the five-year sentence he received for sexual battery by an authority figure, a Class C felony. He asserts that the record fails to support a conclusion that the statutory presumption of his eligibility for alternative sentencing has been rebutted. We modify the term of confinement and order supervised probation forthwith and remand the case to the trial court for imposition of appropriate conditions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Modified and Remanded**

PER CURIAM: GARY R. WADE, P.J., JOSEPH M. TIPTON AND JOHN EVERETT WILLIAMS, JJ.

Robert J. Turner, Nashville, Tennessee, for the appellant, Eugene Floyd Lockhart, a/k/a Floyd E. Lockhart.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Philip H. Wehby, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant pled guilty to sexual battery by an authority figure. The guilty plea hearing transcript reflects that his thirteen-year-old stepdaughter told police that on May 5, 1999, her mother had tried to awaken her for school, but she did not arise. She said that the defendant then entered her bedroom, placed his hands inside her underwear and touched her vagina and breasts. When questioned, the defendant admitted to touching the victim's vagina, but he said that he did not believe that he touched the victim's breasts.

At the sentencing hearing, the victim's father and mother and the defendant testified. The victim's father testified that the victim had been in his custody since June 1999. He said she had a hard time visiting her mother, seeing the defendant's picture on the wall. He said the victim was afraid of being alone and was embarrassed about the event. He said her grades had dropped dramatically. He testified that she had problems with her sister and her mother's family. He acknowledged that the victim's brother and sister still lived with her mother. He requested that the defendant be confined for the fullest extent allowed by law.

The victim's mother, Misty Lockhart, testified that she had been married to the defendant for two and one-half years but had worked with him for years before at Smith Kline Beecham Clinical Laboratories. She said that she began seeing the defendant and became pregnant by him while she was still with the victim's father. She stated that to say that her ex-husband had bad feelings for the defendant was an understatement.

Ms. Lockhart acknowledged that the victim was angry about what the defendant did, but she stated that their mother/daughter conflict, which she attributed to raising a teenager for the first time, started before the event. She said that she got regular visitation with the victim and kept her more that summer than not. Ms. Lockhart did not know of any problems with her daughter, noting that she had left the victim at dances and the skating ring. She said that the victim and her sister would spend time at the pool at night and walk home in the dark.

Ms. Lockhart testified that she believed the victim to be happy, always smiling and kissing. She said that she would not describe the victim as sullen but "maybe distrustful" after the incident. She said she placed her daughter in therapy four days after the incident. Ms. Lockhart asserted that the defendant had not been in contact with the victim since then and that a juvenile court order barred his contact with her children.

Ms. Lockhart testified that the defendant's and her five-year-old daughter lived with her. She also said that she was then pregnant with the defendant's child even though the defendant had left the house immediately after the incident. She expressed a desire that the defendant be allowed to continue working in order to help support the children. She noted that they still worked together, but she said she did not plan to remain married to him if it meant losing her children. She also stated that, even then, whether they stayed married would depend on time and counseling.

The defendant testified that he had worked almost thirteen years at Smith Kline Beecham Clinical Laboratories and trained employees to handle and transport lab specimens. From a previous marriage, the defendant had a seventeen-year-old daughter and a disabled twelve-year-old son in a wheelchair. He maintained support for them until he was jailed in this case.

The defendant testified that he was very sorry about touching the victim and that he did not know why he had done so. He admitted his wrongdoing and expressed a desire to make amends and to support his children. The defendant testified that he had been receiving counseling and had started family counseling with his wife. He said he intended to continue therapy.

On cross-examination and questioning by the trial court, the defendant acknowledged that he had received treatment in 1989 in a hospital in Minnesota. He said it was voluntary and at the recommendation of a counselor in Murfreesboro he had then been seeing. The defendant said that he was treated for a month and it related to drug treatment, mental health, and sexual matters, which he explained related to his adult female relationships. He said he had been "jumping in and out of relationships" and that it had caused numerous relapses with cocaine. We also note that the defendant was convicted of simple possession of marijuana in 1979.

The trial court denied probation. It stated the following:

> All right. There is no question that what the Court does here today . . . isn't going to undo this particular incident and the effect that it will continue to have on custody matters, people's feelings, people's perceptions of themselves. But - and he's not denying it . . . Mr. Lockhart has acknowledged, that's what he brought about on everyone that is not affected by it.
>
> I mean, I've yet to hear anyone, who's charged with sexually abusing . . . a child under eighteen years of age that knew why they did it.
>
> Either they don't want to admit they have the problem of controlling that behavior, or they don't really know either.
>
> But, in terms of issues that I have to consider, that is, equality of sentencing, in terms of what offense Mr. Lockhart's pled guilty to and other individuals in similar situations as him, potential for rehabilitation, which I'm not completely sold on, based on Mr. Lockhart's testimony here today concerning these other incidents.
>
> I realize that's 10-plus years ago . . . I venture to say that, if we had those medical records from that particular treatment, there would be things in there that might have hinted to something like this happening.
>
> Be that as it may, I'm not sure he, in his current status, is a good candidate for rehabilitation, i.e., not offending again. I think confinement is necessary, to avoid depreciating this particular offense. I understand Ms. Lockhart's - there's no question that he being locked up has ramifications on her ability to run a household, and I feel for her about that.

> But there's - it doesn't make sense . . . to me that he would just, out of the blue - and that's why I wonder about the 'eighty-nine stuff - but, out of the blue, on this particular morning, when she's not getting up, go in and decide to touch her vagina.
>
> So, I'm going to impose the 5-year sentence.

The trial court made the defendant eligible for work release, but we note through post-judgment facts that the defendant remained unemployed.

In reviewing a sentence on appeal, the reviewing court's standard is de novo on the record, with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). However, "the presumption of correctness . . . is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, we do not believe that the record adequately shows that the trial court gave the defendant the statutory presumption that he was a favorable candidate for alternative sentencing options.

A defendant who is eligible for probation has the burden of establishing suitability for probation. Although "probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; see State v. Fletcher, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991). However, as the defendant in this case does not meet the description of one who should be given a first priority regarding a sentence involving incarceration under Tenn. Code Ann. § 40-35-102(5), and has been convicted of a Class C felony as a standard offender, he is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

The presumption of suitability may be rebutted if any of the following factors outweigh the defendant's rehabilitative capabilities: (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit a similar offense, or (3) measures less restrictive than confinement have been frequently or recently applied unsuccessfully to the defendant. See Tenn. Code Ann. § 40-35-103(1); Ashby, 823 S.W.2d at 169; Fletcher, 805 S.W. 2d at 787-88. In the present case, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense and questioned his being a good candidate for rehabilitation.

There are several problems with the trial court's determinations. Given the defendant's testimony, any attempt to use the defendant's 1989 Minnesota hospital treatment as a foundation to infer lack of rehabilitation potential necessarily entails mere speculation. We fail to see how the presumption of suitability for alternative sentencing can be rebutted through speculation. In fact,

we note that the trial court never found that the defendant lacked rehabilitation potential but only questioned the potential.

Relative to confinement being necessary to avoid depreciating the seriousness of the offense, we do not see such a basis in the record to justify total denial of probation. In fact, we question the trial court's intent in considering "equality of sentencing, in terms of what offense Mr. Lockhart's pled guilty to and other individuals in similar situations as him." Sexual battery is a Class C felony that carries for standard offenders a presumption regarding alternative sentencing. This means that the mere fact that the offense was committed is an insufficient basis to deny probation. See State v. Travis, 622 S.W.2d 529, 533-34 (Tenn. 1981); Franks v. State, 543 S.W.2d 613, 615-16 (Tenn. Crim. App. 1976). Unquestionably, the age of the victim and the impact on her of the defendant's conduct warrant some confinement. In fact, we note that the defendant has already been confined for over two years. But split confinement and counseling, with the defendant returning to a productive way of life, would be just in this cause.

In consideration of the foregoing and the record as a whole, we modify the sentence of confinement. The defendant shall be placed on probation for the remainder of his sentence and the case shall be remanded for imposition of such terms and conditions as the trial court deems appropriate.

PER CURIAM
(Wade, P.J., Tipton and Williams, JJ.)